## ABRAHAM HEXTER v. GIDEON BAST.

ERROR TO THE COURT OF COMMON PLEAS OF SCHUYLKILL COUNTY.

Argued February 19, 1889—Decided March 25, 1889.

[To be reported.]

(a) The holder of a mortgage securing certain notes assigned the mortgage and notes, without recourse, and at the same time executed a written certificate that he had not received any payment on any of the notes described in the mortgage, except what had been realized upon a sheriff's sale.

(b) The assignee issued a scire facias upon the mortgage wherein a judgment was rendered against him, the findings of fact by the court without a jury, upon testimony in part that of the assignor, showing that in effect the notes were all paid and that the mortgage itself was invalid.

(c) In an action for deceit subsequently brought by the assignee against the assignor, the plaintiff offered to read in evidence the record of the scire facias, including the testimony, the findings of fact and the conclusions of law by the court, and the judgment entered thereon :

### Statement of Facts.

1. In such case, as matter of construction, the certificate was the positive statement of a fact peculiarly within the defendant's knowledge, and the statement one upon which the plaintiff had a right to rely : that it was intended as a warranty was not to be questioned.

2. But the effect of the certificate was to be confined to the particular matters specified therein, as it had no reference and contained no statement as to the execution of the mortgage in respect of a matter which rendered it invalid.

3. The effect of the clause in the assignment—without recourse to the assignor, could not be extended to prevent his liability for the contemporaneous and positive, though fraudulent, representation and warranty that nothing had been paid upon the notes except as stated.

4. If a person is thrown off his guard by a false and fraudulent warranty, it is sufficient to prove the warranty broken to establish the deceit; for one will be presumed to know of the existence or non-existence of a fact which he undertakes to warrant.

5. While the testimony of the living witnesses upon the trial of the scire facias was inadmissible, it was error to exclude the offer of the pleadings, the findings of fact and conclusions of law, offered for the special purpose of showing the particular ground of the judgment for the defendant.

Before PAXSON, C. J., GREEN, CLARK, WILLIAMS and McCOLLUM, JJ.

No. 34 January Term 1888, Sup. Ct.; court below, No. 143 June Term 1876, C. P.

On March 17, 1876, a summons in case was issued in an action by Abraham Hexter against Gideon Bast. Before the trial, the defendant having died, his executors were substituted.

The declaration, which was in several counts, set out in substance an offer by the defendant to sell to the plaintiff a certain mortgage for $12,500 and certain notes secured thereby, accompanied with a promise and undertaking that the mortgage and notes were properly made and executed and that said mortgage was a good, valid and subsisting mortgage and lien upon the property described therein; that in good faith relying upon said promise, etc., the plaintiff purchased said mortgage and notes, but that the defendant not regarding his promise and undertaking, but, contriving and fraudulently intending to injure the plaintiff, did deceive the plaintiff in this, that, as he the defendant well knew at the time, the said mortgage was not a good and valid mortgage, properly made

and executed, nor were the said notes due and unpaid and a collectible indebtedness; on the contrary, said mortgage being a mortgage of the separate estate of a married woman, to wit, Susanna James, wife of William James, had not been explained to said Susanna James separate and apart from her said husband, and properly executed and acknowledged by her, but in truth and in fact, the defendant well knowing the same, was a fraud upon her and was worthless and uncollectible, as were also the said notes. To this declaration, the defendant pleaded, non assumpsit, etc. On April 30, 1883, leave of court being given, the plaintiff filed an amended declaration with additional counts setting forth the same transaction of the offer to sell the said mortgage and notes and the purchase thereof by the plaintiff, " the said defendant then and there falsely warranting to the said plaintiff, that the said indenture of mortgage was a good, true, valid and subsisting mortgage of the said William James and Susanna James upon the premises therein mentioned," whereas, etc. The plaintiff claiming that both declarations were in case for deceit, the defendants, the executors now being substituted, changed the plea to, not guilty.

At the trial on June 1, 1887, the facts of the case appearing were in outline as follows :

On May 1, 1858, Abraham Hexter sold to Chester Stratton and William James a one half-interest in a colliery at New Castle, in payment for which Stratton and James made three promissory notes, drawn to the order of Gideon Bast, each for the sum of $4,166.66, payable in one, two and three years, which notes were indorsed by Gideon Bast and delivered to Abraham Hexter. On May 18th, following, William James and Susanna James, his wife, executed and delivered to Gideon Bast, a mortgage upon the real estate of the wife reciting the making of said notes, that Bast was indorser upon them, that they had passed into the hands of third parties, and providing on its face that the mortgage was given to secure Bast against loss upon his responsibility assumed by his indorsements.

The first note was paid by Bast when it fell due, and on June 3, 1859, to No. 773 June Term 1859, Stratton and James confessed a judgment to Bast for $4,441.53, on which execution issued followed by a sale of the colliery to Bast for $4,500.

The writ, however, was never returned by the sheriff, who testified that the papers were taken out of his office by counsel and parties interested, for the purpose of making a settlement, and were never returned, nor was the purchase money paid to the sheriff. Bast, however, went into possession of the colliery, mined and shipped coal, and exercised acts of ownership thenceforward.

On June 16, 1859, the same day the sheriff levied upon the colliery, Abraham Hexter, to No. 1 September Term 1859, filed a bill in equity against Stratton and James, Bast afterwards being made a party, for an account of the partnership dealings and transactions, for an injunction, and for the appointment of a receiver. This cause proceeded deliberately until it reached a point where the court, on October 26, 1867, ordered a feigned issue for the determination of certain disputed facts by a jury. Hexter then took an appeal to the Supreme Court, from the order directing the said issue.

On November 1, 1870, the appeal to the Supreme Court being then undetermined, negotiations for a settlement of matters between Hexter and Bast were ended by an agreement by which, in consideration of the assignment by Bast to him, without any recourse to said Bast, of the mortgage Bast held against William and Susanna James, and the three notes of Stratton and James, all of which had then come into Bast's hands, Hexter released all claims against Bast in controversy in the equity proceedings and of and from all costs and charges arising out of the sale of the colliery. With the assignment of the mortgage and notes, then made as provided for in said agreement, Bast signed and delivered to Hexter the following paper:

"Now, to wit: November 1, 1870, I do hereby certify that I have not received any payment on any of the three promissory notes described in a mortgage from Mrs. Susanna James and William James, dated May 18, 1858, to Gideon Bast, and recorded . . . . . excepting that which was realized out of the judicial sale of the respective interests of James and Stratton in their personal property, and Stratton's real estate."

In the following year, to No. 445 March Term 1871, a writ of scire facias was issued upon the James mortgage by Hexter, as assignee of Bast, against William James and Susanna, his

wife. Trial by jury was waived and the cause heard by the court. Among other testimony adduced on the hearing in this proceeding, Mr. Bast testified: "There was never anything mentioned about my releasing James from this debt, if he would confess judgment. . . . . I got these notes in my possession when I paid them. You can see when that was, on the notes; when they fell due at the Miners Bank at Pottsville. I bought Stratton and James's interests in the colliery at sheriff's sale. They could not carry it on. If my memory is right I bought the colliery for the claim which I had against it, $12,000. I had not paid that at that time; I only paid the notes when they fell due. I think one note was paid; the others were in the hands of Emanuel Strauss." The court found, inter alia, as follows: "The weight of the evidence is, and we find, that in consideration of the confession of this judgment [No. 773 June Term 1859], and his purchase of the interest of Stratton and James in the colliery, Bast agreed to pay the other notes which he had indorsed for Stratton and James to Hexter, and also to release the mortgage given to him by William James and Susanna James. . . . . That the real estate described in the mortgage was the property of Susanna James, owned by her in her own right; that when she inquired as to the nature of the paper she was requested to sign, her husband told her that it would not hurt her, and beyond this no explanation was given; that no examination of Mrs. James, such as was required by law, was made by the magistrate nor did he take her acknowledgment of the mortgage." Upon the foregoing and other findings, the court on February 14, 1876, entered judgment in the scire facias for the defendants. Then the present suit was brought by Hexter against Bast.

To sustain the issue raised, the plaintiff offered in evidence the record of the scire facias, Abraham Hexter, assignee of Gideon Bast, against William James and Susanna James, No. 445 March Term 1871, with all the proceedings in the case, for the purpose of showing that upon the trial of the cause it was proved and the court so found, that the mortgage upon which the scire facias had been issued had been paid long prior to the time the mortgage and the notes were assigned by

Gideon Bast to Abraham Hexter, and that at the time of the assignments, not only the mortgage and notes had been paid in full, but that fact appeared from the evidence in the cause, and especially Mr. Bast's own testimony.

Defendants' counsel objected that the record mentioned in the offer was not the record of judgment between the parties to this suit; that as to them it was res inter alios acta; that the record and proceedings were irrelevant and incompetent.

By the court: We admit the offer to the extent of showing that the plaintiff instituted a scire facias upon this mortgage and what the result was. As to the part including the testimony in the case, we rule it out.

Mr. Ryon: Does your honor rule that the reasons for the judgment are evidence?

By the court: No, sir; if I come to the conclusion that the reasons are admissible, I will rule upon it again; exception.[1]

On the next day of the trial, the plaintiff offered in evidence the record of the equity case of Abraham Hexter against Stratton, James and Bast, No. 1 September Term 1859, to show first the consideration, mentioned in the agreement, for the assignment of the mortgage against James and wife, and, also, for the representation of Mr. Bast, already in evidence, that he had received no portion of the purchase money due on the notes and mortgage except what he had received through the sheriff's sale of the colliery property, etc.; and, second, to lay the foundation for certain evidence of admissions of Mr. Bast that he had agreed, in consideration of the confession of judgment by James and Stratton and the sale of the colliery, that he would release the mortgage which he held as security for the three notes.

Defendants' counsel objected to the offer as irrelevant, incompetent, and immaterial.

By the court: Offer refused, so far as the equity proceedings are sustained; exception.[2]

Plaintiff then offered in evidence the record of the findings of fact and the conclusions of law, together with the judgment of the court thereon, in the scire facias to No. 445 March Term 1871, to show the fact that the judgment was entered upon evidence that the mortgage upon which the scire facias had issued had been paid by an agreement between Mr. Bast and Mr. James;

that in consideration of the confession of the judgment and the sale of the interest in the colliery to Mr. Bast, there was to be a satisfaction of the mortgage.

Defendants' counsel renewed their objection.

By the court: No doubt the object of the legislature, when they allowed parties to dispense with trial by jury, referring the controversy to the court, and requiring the court to specifically find the facts and to put them in writing, was to give the Supreme Court the same opportunity that the court below would have, where the jury found the facts. · The judge, hearing the evidence and submitting it to a jury, may determine whether their verdict is in accordance with the evidence, or whether it is contrary to the evidence. Under the act of 1874, a jury may be dispensed with. It is important that the facts found by the judges, should be put in writing, to determine whether the evidence would support the findings of fact or not. The finding of the court has simply the same effect as the verdict of a jury. I listened to the discussion yesterday; I desire to admit whatever is admissible as evidence; I usually throw my doubts in favor of the admissibility of evidence, but I have the same opinion I had then, that the offer is inadmissible, except to the extent that it was admitted yesterday. We therefore seal a bill to the plaintiff.[3]

Plaintiff's counsel then offered to prove by his honor, Judge GREEN, that the finding of the court, in the decision of the case of the scire facias upon the mortgage, No. 445 March Term 1871, was made under the evidence upon two grounds: (1) that the mortgage had been paid before the assignment to Mr. Hexter by Mr. Bast; (2) that there had been no proper acknowledgment of the mortgage, so as to make it a valid instrument: that evidence was given on these two issues, and the court made its finding on the law and the facts, upon the evidence before them: this for the purpose of showing the fact, that on the trial of this mortgage, those facts were in evidence, and the judgment of the court was made up on those facts in the record.

Defendants' counsel made the same objection as before, that the testimony was incompetent, immaterial and irrelevant.

By the court: Offer refused; exception.[4]

Charge of Court below.

At the close of the testimony, the court, PERSHING, P. J., charged the jury, inter alia, as follows :

Now, it is at this point in the case, namely, November 1, 1870, that the controversy that you are to determine arises. Hexter, having taken an assignment of the mortgage and these notes without recourse to Bast, would be bound by his contract in that respect.   If it turned out that the parties who were obligated by the mortgage and notes were unable to pay them, it would be a contract between the parties which would bind the plaintiff in this action.   But it was claimed here that there was fraud, misrepresentation, deceit, practiced by Bast in assigning this mortgage and these notes to Hexter, and it is a well known rule of law that fraud will vitiate all contracts into which it may enter.   The question you are to determine is, whether at the time of the assignment of the mortgage and notes to Hexter, there was such misrepresentation, such fraud, such deceit practiced upon Hexter, as would authorize him to bring an action to recover from Bast damages which he sustained in consequence of such misrepresentation.

It is in evidence here that Hexter instituted proceedings on this mortgage against William James and Susanna James, and that he failed to recover in that action.   The reason why he failed to recover is not before you.   The fact, the judgment of the court, that he could not recover in that action, is before you, because had he then recovered he would have no ground of action now ; and it is only because he then failed to recover in the proceedings on the mortgage against the property of Mrs. James as a married woman, that he is authorized now to come into court and claim to recover in this action.   There was evidence in that case—it is hardly necessary for me to discuss it, only it has been referred to before you by counsel to an extent which I think was scarcely warranted—there was evidence in that case that is not in this case.   Parties were sworn then that are not sworn now, and the reasons for the action of the court in that case, the reasons for their conclusions, are not matters for your consideration.   The conclusion itself, namely that Hexter failed to recover, is before you in evidence, and properly, as showing the right to institute this action.

[Was there misrepresentation, fraud, and deceit practiced

Charge of Court below.

by Gideon Bast upon Hexter at the time he assigned the securities to him? If there was, then it would vitiate any contract entered into between the parties, and the plaintiff here would have the right to recover. If there was not, then he would have no right to recover.] [11] It is claimed that at the time the mortgage and notes were assigned to Hexter, they had been extinguished, that the mortgage as a matter of law and fact had been paid, and that, therefore, it was not a subsisting lien at the time it was transferred to Hexter; that Bast knew the fact that the mortgage had been extinguished, and that, therefore, in assigning it to Hexter he practiced upon him an imposition, practiced upon him a fraud.

In connection with that, one of the papers dated on the first of November, 1870, has been read to you, in which Mr. Bast sets forth: " I do hereby certify that I have not received any payment on any of the three promissory notes described in a mortgage from Mrs. Susanna James, and William James dated May 18, 1859, to Gideon Bast, and recorded in the county of Schuylkill, etc, excepting that which was realized out of the judicial sale of the respective interests of James and Stratton in their personal property and Stratton's real estate." The plain implication is that there was a balance still coming to him; that he had received upon these three notes described in the mortgage something, some of the proceeds at least of the judicial sale of Stratton and James' personal property and of the proceeds of the sale of Stratton's real estate, but beyond that he had received nothing. The plain implication would be that he still claimed that there was money due to him on these notes secured by this mortgage.

The plaintiff here, in order to recover, undertakes to show you that at the time of this transfer, the mortgage had been wholly paid, had been wholly extinguished, and that that fact was known to Bast, and therefore in making the assignment, in giving this certificate, he was guilty of fraud upon Hexter. Upon that point two or three witnesses have been examined, as going to show that in consideration of Stratton and James confessing the judgment to which I have called your attention, to Bast, enabling him to issue execution and sell their interest in the colliery and purchase it, he agreed that that should be a release of the mortgage, an extinguishment of the mortgage;

and the allegation is, that judgment was confessed under that arrangement, and the property was bought in pursuance of the arrangement, by Bast, and that he obtained the consideration for the agreement, and entered into possession of their interest in the colliery.

Taking the witnesses as they were called, you have

\* \* \* \* \* \* \* \*

In addition to this the plaintiff has offered in evidence the testimony of Mr. Bast taken in the suit between Hexter and William James and Susanna James, for the purpose of showing you that there was an agreement such as that claimed here ; that it was carried out, and that as a result of that, Bast had no further interest in the mortgage and had nothing to transfer of any value to Hexter. The whole of it must be taken into consideration, of course, in making up your minds as to the effect you will give it. He, first, as read to by counsel, swears that he never agreed to release James, if he would give him a judgment. He states he paid these notes as they fell due, or one was paid ; that is, he lifted them as they fell due ; one was paid and the others in the hands of Emanuel Strauss, and it would seem subsequently passed into the hands of Bast. He testified " I bought Stratton and James' interest in the colliery at sheriff's sale ; they could not carry it on ; if my memory is right I bought the colliery for a claim which I had against it, $12,500; did not pay that at that time ; I only paid the notes as they fell due; I think one was paid and the others were in the hands of Strauss."

This is the evidence upon the question whether this mortgage was paid at the time that it was transferred to Hexter, and had been paid through an arrangement made by Bast, himself. Of course, the usual rule is, that if the mortgage is paid, it extinguishes the debt secured by the mortgage, unless there is a contract to the contrary. A party may release a mortgage and still hold on to the debt, if they so make the bargain. But the usual rule is that the payment of the mortgage will extinguish the notes secured by the mortgage, and the payment of the notes will extinguish the mortgage which it is intended to secure.

\* \* \* \* \* \* \* \*

The plaintiff asks us to instruct you as follows :

Charge of Court below.

1. That the agreement of November 1, 1870, which Gideon Bast executed at the time he delivered over the assignment of the mortgage against William James and Susanna James for $12,500, recorded in Mortgage Book O, page 203, and the three promissory notes, dated May 1, 1858, for $4,166.66 each, to Abraham Hexter, the plaintiff in this case, certified and represented that no payment had been made on the said mortgage and notes, except the amounts as credited on the judgment which Bast held against Stratton and James, by the sheriff's sale of the interest of Stratton and James in the personal property, which appears from the evidence, amounted to $4,500, less the amount due for labor liens, and from the sale of Stratton's real estate; but there is no evidence in the case that Stratton's real estate was sold, or that any sum was realized that could be credited on the mortgage and notes.

Answer: There is no question of law here for the court to decide. It is a mere recital of the facts, and asks us to say to you that there is no evidence in the case that Stratton's real estate was sold. The only evidence, I believe, upon that subject, is in the paper which passed between Hexter and Bast on the day of the assignment, November 1, 1870, when the agreement of settlement was entered into, in which paper, Mr. Bast certifies that he received nothing on the notes, except what he received through the judicial sale of the personal estate of James and Stratton and the sale of the real estate of Stratton. What sheriff Hobart sold, except what he sold at the colliery, does not appear. I must say to you that this branch of the case is very unsatisfactory to me, as I suppose it will be to you, because the ground for damages ought to be plainly shown. Inasmuch as Mr. Hexter had notice here that Bast did not transfer to him the whole amount of the notes, that he only transferred to him what had been left after taking out of it the proceeds of the judicial sale of Stratton and James' interest, and the sale of Stratton's real estate, it is very important for a jury to know exactly what those amounted to, in order to ascertain what really was assigned to Hexter. Neither party has shown that. It has been shown that the personal property, as I understand it, was sold for $4,500. There is nothing here to show what the real estate was sold for, if there was any real estate sold, and you are thus left in the dark upon what I regard as a very important matter in this case.[5]

2. That the record of the suit of the scire facias of A. Hexter, assignee of Gideon Bast, v. William James and Susanna James, issued upon this mortgage, assigned by the said Bast to the said Hexter, shows that the said William James and Susanna James successfully defended the said suit in the scire facias on the said mortgage, and recovered a judgment in their favor; and under the evidence in this case the jury may find that at the time of the said assignment of mortgage and promissory notes, that the said mortgage and the notes had been paid and fully discharged by the said William and Susanna James to the said Gideon Bast before the assignment of the same by the said Bast to said Hexter.

Answer: We decline to instruct you as to what inferences you may draw. The evidence is before you. You can draw your inferences, but we are not called upon to tell the jury what inferences of fact they may draw from the evidence before them. The record in the case is in evidence so far only as to show there was a suit and Hexter recovered nothing in that action. The reason why is not before you. The evidence in that case is not before you. We decline to say to you what inferences of fact you may draw from other facts in the case. You have the facts, and you may draw your legitimate inferences from them.[6]

4. The fact that the assignment was made "without recourse in any event whatever," does not bar the plaintiff's right to recover any damages he may have sustained by reason of any defect in the mortgage and notes assigned, where notice of said defect was withheld either by concealment or by direct misrepresentation.

Answer: We have virtually affirmed that, that if there was fraud and misrepresentation in the transfer of this mortgage, the plaintiff would have a right to institute his action and not be bound by the clause "without recourse," because fraud would vitiate that portion of the contract as well as any other, if there was fraud or misrepresentation.[7]

5. If the said Gideon Bast had agreed to satisfy the said mortgage debt and to cancel the said mortgage and to take the interest of said Stratton and James in the said colliery by sheriff's sale, then it was a full payment of the said debt of $12,500, for which the said mortgage and notes were given, and if at the

Charge of Court below.

time he assigned said mortgage and notes to the said Abraham Hexter, the plaintiff in this case, in consideration of the settlement of pending litigation in equity in which the said Abraham Hexter was complainant, and said Gideon Bast and others defendants, the said Bast represented that the said debt of $12,500 was a subsisting debt of $12,500, on which there was but a credit of the proceeds of the sheriff's sale applicable to the said Bast's execution, then said representation was false and untrue and such a misrepresentation and fraud on the said Abraham Hexter, as would entitle him to a verdict to the amount he could have realized had the mortgage debt not been paid, with interest.

Answer: Whether the representation was false and untrue is a question of fact for you. We would say as to this, taking the point down to that portion of it, instead of saying, "then said representation was false and untrue," we say, "if said representation was false and untrue." If you find it false and untrue, it would be a fraud upon Hexter which would authorize him to recover.[8]

6. That the said Gideon Bast by his assignment of November 1, 1870, of said mortgage dated May 18, 1858, made by William James and Susanna James for the sum of $12,500, and also by the assignment of the three notes of equal amount, to wit: $4,166.66, secured by said mortgage, undertook and warranted that the said mortgage was genuine and binding on the mortgagors and was a genuine and legal claim against the said mortgagors and that the same had not been previously paid or otherwise discharged or otherwise valueless; and, having failed to notify the said Abraham Hexter at the time of the execution and delivery of the assignments of the said mortgage and notes or to disclose any and all facts and circumstances connected with its execution and delivery, or any facts which rendered said mortgage and notes invalid, the said Bast was and his legal representatives now are liable in damages for the value of the said mortgage notwithstanding the fact that the assignment of said mortgage is "without recourse in any event whatever."

Answer: We are asked to say here that in making this assignment Bast undertook and warranted that the mortgage was genuine and binding on the mortgagor. We think that

the principle in this point is answered in the affirmative by the case of the People's Bank v. Kurtz, 99 Pa. 344. Chief Justice SHARSWOOD, delivering the opinion, said: " It was held at first that in an action on the case for deceit against a party who had sold a personal chattel to the plaintiff, to which he had no title, that it was necessary to aver a scienter. But this doctrine was subsequently exploded, and an averment of possession considered sufficient, as the vendor must be intended cognizant of his own title, the sale being necessarily an affirmation of title. It may now be regarded as well settled, that a party, selling as his own, personal property of which he is in possession, warrants the title to the thing sold, and that if by reason of defect of title, nothing passes, the purchaser may recover back his money, though there be no fraud or warranty on the part of the vendor. This doctrine is held to apply to choses in action as well as other descriptions of personal property." This was a sale of shares of stock which turned out to be a fraudulent over-issue of stock. The court says: " Shares of stock in a corporation are choses in action, giving a right to dividends and an interest in the capital. The certificate is the evidence of such ownership, and there can be no doubt that if the certificate is forged, or the holder is not such bona fide, so that he has no claim on the corporation, the vendor would be liable to his vendee on the implied warranty of title." The question was argued here at some length as to implied warranty, and this case seems from what I gather to meet this point.[9]

8. That under all the evidence in this case, the verdict of the jury should be in favor of the plaintiff.

Answer: I cannot give you that instruction. I also answer a similar point on the part of the defendants in the same way.[10]

[As to the rules governing actions of this kind, I will read some extracts from a decision of the Supreme Court in an action on the case for deceit, fraud: " This action is upon an alleged tort; not upon a contract. To support it the rule requires that the plaintiff must show that the representations under which he acted were untrue, known by the defendant to be untrue; that they were such as were calculated to induce the plaintiff to act, and that he, believing those representations, acted in accordance with his belief. The representations

must be both false and fraudulent. A positive statement of a falsehood, or suppression of material facts which the plaintiff ought to have known, would constitute the falsity: " Cox v. Highley, 100 Pa. 252. The falsity does not consist simply in stating that which is untrue; it may sometimes consist in suppressing or keeping concealed what is true. If the jury believe that the defendant acted honestly, that he believed that what he stated was true, then this form of action could not be sustained, although another form of action might be. This is the general rule governing actions of this character, actions of deceit, actions for alleged fraudulent representations which induce a party to act to his hurt, and which give him a right to recover in consequence of the injury he has sustained through the fraud or misrepresentation of the party with whom he is acting.] [12]

The jury returned a verdict for the defendants. A rule for a new trial having been discharged, the plaintiff took this writ, assigning as error:

1–4. The refusal of the plaintiff's offers.[1 to 4]

5–10. The answers to the plaintiff's points.[5 to 10]

11, 12. The parts of the charge embraced in [ ] [11] [12]

*Mr. Geo. W. Wadlinger* (with him *Mr. Chas. N. Brumm, Mr. Seth W. Geer,* and *Mr. James Ryon*), for the plaintiff in error:

1. Gideon Bast assigned this mortgage to Hexter with a warranty that the mortgage was a subsisting and legal debt. Hexter sued out a scire facias on the mortgage and failed to recover, because the debt was paid before the assignment to Hexter and because the mortgage had never been properly acknowledged. Bast therefore stood in a relation of privity with Hexter in the suit on the mortgage, and was bound by the judgment. It was therefore error to refuse the offer of the record, with the findings of fact and conclusions of law upon which the judgment was entered: Leather v. Poultney, 4 Binn. 352; Kauffelt v. Leber, 9 W. & S. 93; Jacob v. Pierce, 2 R. 204; Paul v. Witman, 3 W. & S. 407; Lloyd v. Barr, 11 Pa. 52; Rawle on Covenants, 208; Follansbee v. Walker, 74 Pa. 306; Hostetter v. Pittsburgh, 107 Pa. 434; Ayres v. Findley, 1 Pa. 501; Huzzard v. Nagle, 40 Pa. 178; Coates v.

Roberts, 4 R. 111; Northumberland Co. Bank v. Eyer, 58 Pa. 97; Carmony v. Hoober, 5 Pa. 305. That it was competent to show by the parol testimony of his honor Judge Green, what evidence was given on that trial, to explain the record and show that the finding of the court was founded upon evidence of the payment of the mortgage to Bast before the assignment and upon the defective acknowledgment, is ruled by Marsh v. Pier, 4 R. 273; Croft v. Steele, 6 W. 373; Frisch v. Miller, 5 Pa. 310; Coleman's Appeal, 62 Pa. 272; Huzzard v. Nagle, 40 Pa. 178.

2. From the case of Chandelor v. Lopus, 2 Cro. Jac. 4, to the present time, it has been held in this country that in all sales of personal property there is a warranty of title and that the thing delivered shall correspond with the thing sold: Borrekins v. Bevan, 3 R. 23; Hare on Contracts, 522; 1 Sm. L. C., 5th Am. ed., *237, *238; McFarland v. Newman, 9 W. 55; Dailey v. Green, 15 Pa. 125; Warren v. Coal Co., 83 Pa. 437. But the certificate of November 1, 1870, was an express warranty that the mortgage and notes were valid and existing securities, and that they were not only unpaid but were also properly executed. To constitute an express warranty, no special form of words is requisite; it is enough if the words are dubious or equivocal, and if it appear from the whole evidence that the affirmant intended to warrant and did not express a mere matter of judgment or opinion: Jackson v. Wetherill, 7 S. & R. 480; Vanleer v. Earle, 26 Pa. 277; Hare on Contracts, 560; Benjamin on Sales, 499. The assignment is a warranty of title, broken as soon as made, if the security be not valid in point of fact; and the assignee need not wait till it is due nor tender a return of the security before bringing suit: Flynn v. Allen, 57 Pa. 482; Eagan v. Call, 34 Pa. 236; Whitaker v. Eastwick, 75 Pa. 231; Stroh v. Hess, 1 W. & S. 147; Cornelius v. Molloy, 7 Pa. 293; Vanleer v. Earle, 26 Pa. 277; Boyd v. Bopst, 2 Dall. 91; Swanzey v. Parker, 50 Pa. 441; Kauffelt v. Leber, 9 W. & S. 93.

3. From the facts established, the plaintiff claimed a conclusion of law. The court were bound to construe the declaration in writing of November 7, 1870, and instruct the jury as to its effect. The court correctly said that it amounted to a warranty, but declined to say to the jury in answer to the plaintiff's

several points that the plaintiff was entitled to recover what-
ever damage he had suffered in consequence of its breach.
Whether the defendant did or did not know, at the time he
assigned the mortgage to Hexter, that the mortgage had been
paid, or that it was void on account of the failure to properly
acknowledge it, was wholly immaterial. The evidence clearly
showed that there was not only an implied, but an express war-
ranty that the mortgage and notes were really what they pur-
ported to be. Under this view the plaintiff was entitled to
direct and positive instructions that the title to the mortgage
and notes having failed, the plaintiff was entitled to recover.

*Mr. Guy E. Farquhar* (with him *Mr. S. H. Kaercher* and
*Mr. John W. Ryon*), for the defendants in error: ·

1. The court admitted the record of the scire facias sur
mortgage to show that the writ had been issued and the judg-
ment entered thereon. In offering the record, the plaintiff was
permitted to, and did, read the findings of fact upon which
the judgment was based. The part of the record which con-
sisted of the testimony taken upon the trial was rejected by the
court. The evidence taken upon the trial of a pending cause
is not a part of the record. There is no principle of law upon
which the claim to read the testimony taken upon the trial of
the scire facias can be justified. The record was not between
the same parties, and the same subject matter was not directly
in issue. The record wanted these requisites, and it was there-
fore properly rejected: Bratton v. Mitchell, 3 Pa. 493; 1 Greenl.
Ev., 523; Marsh v. Pier, 4 R. 273; Pryor v. Wood, 31 Pa. 142.
The recent case of Hostetter v. Pittsburgh, 107 Pa. 434, shows
clearly that the plaintiff's offers were properly rejected.

2. In an action of ejectment, the pleadings are so general
that they do not show the grounds for a recovery. Does the
same rule hold in a scire facias sur mortgage? The writ recites
the mortgage with particularity. The issue is made up by
pleading, and nothing can be tried except what appears within
the four corners of the pleadings, set out with such particu-
larity as to leave no doubt as to what was tried, and upon what
a verdict or judgment was based: See Coleman's App., 62 Pa.
272; Zeigler v. Zeigler, 2 S. & R. 286; Wilson v. Hamilton,
9 S. & R. 424; Cist v. Zeigler, 16 S. & R. 282; Carmony v.

Hoober, 5 Pa. 305. While parol evidence may be received to explain and limit the effect of a judgment, wherever it is not inconsistent with the record, none of the cases hold that you can read the testimony of living witnesses taken upon the former trial. Gideon Bast was a witness upon the trial of the scire facias, and, being dead at the trial of this case, his testimony as taken was read by the plaintiff.

3. The papers of date November 1, 1870, are to be considered as constituting a single transaction, and the question is whether taken together they constitute a warranty of title. There is certainly no express warranty, because there are no words which amount to an undertaking that the defendant would be responsible in any event for the obligations transferred to the plaintiff. There was no implied warranty. Mere representation does not constitute a warranty: McFarland v. Newman, 9 W. 55; Whitaker v. Eastwick, 75 Pa. 231. The transfer of the mortgage, as well as the notes, was made, by express agreement, without recourse to Gideon Bast in any event whatever. The employment of that language, which is in the contract of sale between the parties, excludes the possibility of warranty as to title or otherwise: Chitty on Bills, 288; 1 Parsons on Contracts, 460; Baglehole v. Walters, 3 Camp. 154; Schneider v. Heath, 3 Camp. 208.

4. It is contended that the plaintiff could have recovered either upon an express or implied warranty, and that the question of misrepresentation, fraud or deceit, had no bearing upon his right to recover in case of a warranty. Such is not the rule in Pennsylvania. This court has decided in a number of cases that there is a broad distinction between an action on the case for deceit, and an action in assumpsit upon a warranty. In the former case the warranty may be given in evidence for the purpose of showing the representations, but in addition it must be averred and proved that the representations were known to be false: Erie City I. Works v. Barber, 102 Pa. 163; s. c., 118 Pa. 6. Applying the principle stated in the case last cited, we find that the original declaration in this case was in assumpsit, and subsequently, after the statute barred a recovery for any cause of action different from that set out originally, an amended declaration was filed, not in assumpsit upon a warranty, but in case for fraud and deceit. It therefore became

material for the plaintiff to prove a scienter: Erie City I. Works v. Barber, 118 Pa. 6 ; Cox v. Highley, 100 Pa. 249.

OPINION, MR. JUSTICE CLARK:

This is an action on the case for deceit. Some of the counts in the declaration might perhaps be read as for an injury arising ex contractu ; but, as the plaintiff stated at the trial that the injury complained of arose ex delicto, that the original as well as the amended declaration set forth a cause of action in deceit, and the defendants, conforming to that theory of the case, entered a plea of not guilty, we will consider the questions presented as they were presented at the trial in the court below. It would be unfair to the learned judge to do otherwise, for it would appear that it was upon this suggestion of counsel the amended declaration was filed, and the trial conducted as in deceit. The plaintiff having thus indicated to the court his election to consider the counts as for deceit, the cause should be considered as if the pleadings were consistent and the action wholly in that form.

Some of the counts are for deceit, by means of fraudulent misrepresentations, and some upon a fraudulent breach of warranty, and all are based upon the certificate accompanying the transfer of the notes and mortgage, which it is claimed creates an express warranty of the facts therein contained. The plaintiff avers that by means of this warranty, which was false and fraudulent, the defendant in his lifetime sold, and the plaintiff was induced to buy, the securities in question.

This involves the construction not only of the certificate, but of the various transfers and the release, which, it must be conceded, taken together constitute a single transaction. A warranty, although a collateral contract, must form part of the transaction involving the sale. If the vendor have the possession no special form of words is necessary to create it ; an affirmation at the time of the sale is sufficient, provided it was so intended. It is enough, if the words used are not equivocal, and if it appears from the whole evidence that the affirmant intended to warrant, and did not express a mere matter of judgment or opinion : Warren v. Phila. Coal Co., 83 Pa. 437.

At the time of this transaction Bast gave a certificate, in the most positive and unequivocal terms, that he had not received

any payment on any of the notes described in the mortgage, etc., excepting that which was realized at the sheriff's sale, etc. This is the only warranty alleged; if there was any other, it was such only as was implied by law, and none such, under the special facts and circumstances of this case at least, would be open to the charge of fraud, but would be available only in some other form of action.

The matters set forth in the certificate were certainly not the expression of a mere opinion, or of the defendant's judgment, in reference to any matter of which he might or might not be correctly informed; it was the positive statement of a fact which was peculiarly and indeed exclusively within his knowledge, and the statement was one upon which Hexter had a right to rely. That it was intended as a warranty cannot be questioned, and, whether it was or not, was a question of law to be determined by the court upon an examination and construction of the paper. But it must be confined to the particular matters specified therein; it has no reference and contains no statements, as to the proper execution of the mortgage, nor is there any evidence that the defective acknowledgment of the mortgage was known to Bast. That he knew his certificate was false, however, is apparent, for, although when called as a witness on the trial of the scire facias, he denied having released James and wife, yet he confessed that he purchased the mortgaged premises at the sheriff's sale for the claim he had against it, $12,500, and this is in accord with the plaintiff's claim in the present case.

It is true the transfer of the mortgage, which was admittedly the only available security, was "without recourse to the said Gideon Bast in any event whatever." These words have no technical import, perhaps, in the transfer of non-negotiable instruments; they are important only as they may indicate the understanding of the parties, that the plaintiff should take the mortgage subject to every risk, as well the solvency of the parties, as the validity of the mortgage itself; but there is no process of reasoning that could extend the effect of this clause to prevent his liability for the cotemporaneous, positive, though fraudulent, representation and warranty, that nothing had been paid upon it, except as stated.

The general rule is, that to support an action of deceit, pro-

perly so called, it must appear that the fraudulent representation complained of was untrue ; that the defendant knew, or ought to have known, at the time it was made, that it was untrue ; that it was calculated to induce the plaintiff to act upon it, and that, believing it to be true, he was induced to act accordingly : Cox v. Highley, 100 Pa. 249. As a general rule, the statement must be both false and fraudulent; but, if a person take upon himself to state as true, that of which he is wholly ignorant, he will, if it be false, incur the same legal responsibility as if he had made the statement with knowledge of its falsity : the fraud consists in representing that he knows that of which he in fact is consciously ignorant. So, too, if a person is thrown off his guard and deceived, by a false and fraudulent warranty, it is sufficient to prove the warranty broken, to establish the deceit : Addison on Torts, 1181 ; for one will be presumed to know of the existence or non-existence of a fact which he undertakes to warrant.

The first and third assignments of error are to the refusal of the plaintiff's offer to read the record of the action on the scire facias. The first embraced the offer of the entire record, including the testimony taken in the cause ; and the third embraced only the findings of fact, the conclusions of law, and the judgment entered thereon. The action was in the name of Hexter, to whom the mortgage had been assigned, in the form and manner regulated by statute ; Bast had no notice of the proceeding and had no control over it ; he had no right to adduce testimony, or to cross-examine the witnesses, and could not have reviewed the judgment. But the judgment was, notwithstanding this, admissible to show that Hexter had exhausted his legal remedies, and had failed to recover ; and we think it was competent for the plaintiff to exhibit the issue formed by the pleadings, in order that it might appear upon what ground the judgment went against him, and, if these were too general in form for that purpose, it was proper for him to resort to the findings of fact, the conclusions of law, and the judgment entered thereon. These findings were perhaps not receivable in evidence as proof of the facts stated therein, but they were without doubt evidence of the exact and particular ground of the defendants' recovery. If that trial had been by jury, other methods of proof recognized in our practice would

necessarily have been pursued, but the formal findings filed of record certainly furnished the best evidence of this fact of which the case was capable. The general principles upon which this proof was admissible are illustrated in the cases of Kauffelt v. Leber, 9 W. & S. 93; Follansbee v. Walker, 74 Pa. 306, and many others which might be cited.

It is said that the findings of the court in the previous case were read in the hearing of the jury, in connection with the offer of the judgment, without objection; but, even if this were so, their legitimate and proper effect was wholly neutralized in the charge, as will appear by an extract from it as follows: " The fact, the judgment of the court," says the learned judge, " that he could not recover in that action, is before you, because had he then recovered, he would have no ground of action now, and it is only because he then failed to recover in the proceedings on the mortgage against the property of Mrs. James, as a married woman, that he is authorized now to come into court and claim to recover in this action. There was evidence in that case—it is hardly necessary for me to discuss it, only it has been referred to before you by counsel, to an extent which I think was scarcely warranted—there was evidence in that case that is not in this case. Parties were sworn then that are not sworn now, and the reasons for the action of the court in that case, the reasons for these conclusions, are not matters for your consideration. The conclusion itself, namely, that Hexter failed to recover is before you in evidence, and properly, as showing the right to institute this action." The court was right, we think, in excluding the testimony of the witnesses, in admitting the judgment, and also the testimony · of Bast; but we think the offer of the pleadings, of the findings of fact, and conclusions of law, were also admissible, for the particular and special purpose stated.

We are of opinion, also, that it was proper to prove that there was a suit in equity between Hexter and Bast, although this does not appear to have been very important, for the purpose of showing the matter out of which came the release, and to show the consideration upon which the transfer of the securities and the warranty were based.

We have not followed the assignments of error in their order, or discussed them singly, but, disregarding and eliminating

Statement of Facts.

from the case all that is irrelevant to the issue in deceit, we have indicated with as much clearness as we can the principles upon which we think the case should be re-tried.

The judgment is reversed, and a venire facias de novo awarded.