Kelly *v.* Herrington et al., Appellants.

Argued November 12, 1959. Before GUNTHER, WRIGHT, WOODSIDE, ERVIN, and WATKINS, JJ. (RHODES, P. J., and HIRT, J., absent).

*B. A. Karlowitz*, with him *Patterson, Crawford, Arensberg & Dunn*, for appellants.

*Harry Alan Sherman*, for appellee.

OPINION BY GUNTHER, J., December 17, 1959:

These appeals are from the refusal of a motion for judgment n.o.v. in a trespass action for fraud and de-

ceit. In March, 1954, a representative of Illinois Continental Machine Corporation approached appellants, George R. Herrington, president, and William J. Gumbert, secretary-adjutant of the Allegheny County Council of Veterans of Foreign Wars of the United States, Incorporated, who proposed a method by which funds could be raised for hospital activities sponsored by the Veterans of Foreign Wars. This arrangement was embodied in an agreement under which the representative of the vending machine company would secure purchasers for candy and gum machines and that these purchasers then would operate such machines at locations obtained by the appellants. The owners-operators of these machines would pay appellants ten percent of the gross income from such machines in return for locations secured by appellants. Previous to any steps taken by the vending machine company representative, this agreement was signed by appellants, George R. Herrington and William J. Gumbert, as the proper officers of Veterans of Foreign Wars. Thereafter, the vending machine company representative, in an effort to find purchasers for these machines, who would also operate them, inserted advertisements in the Pittsburgh papers. Appellee, Francis J. Kelly, responded to this advertisement and met the representative of the vending machine company. He exhibited to him the agreement signed by appellants and, after some persuasion signed an agreement to purchase fifty of these machines on the assurance that they would be placed by appellants in suitable locations.

Not being entirely satisfied with the agreement exhibited to him and signed by appellants, appellee, before paying out any money on this transaction, contacted George R. Herrington and inquired of him whether the contract document exhibited to appellee was, in fact, signed by him and whether the Veterans of Foreign Wars sponsored the vending machine proj-

ect. Upon being assured that the signed document was genuine and that appellants were sponsoring the project, appellee drew, on March 18, 1954, a check in the amount of $2,710.44 and gave it to the manufacturer's representative. Subsequent thereto, and before the machines actually arrived, appellee attended several meetings conducted by appellants where he was informed as to the details of the operation and the amount to be paid to appellants. Appellee was also instructed to inform appellants as soon as the machines arrived so that the same might be serviced and placed in the various locations.

On April 18, 1954, an article appeared in one of the Pittsburgh daily papers indicating that the proposed vending machine project was illegal and contrary to the Act of 1925, May 13, P. L. 644, as amended, 10 P.S. sections 141, 151. Thereafter, appellee was informed not to do anything until the provisions of the Act could be complied with. Appellants never did obtain a license for these machines and the project was indefinitely suspended and appellee was instructed to remove the machines previously placed on locations.

Upon refusal to return the money advanced by him, appellee brought the action to recover damages for fraud and deceit, alleging that appellants had induced him to purchase the machines and that he had assumed the project was lawful. The case was submitted to a jury which returned a verdict in his favor in the amount of $3,562.37. A motion for a new trial and a motion for judgment n.o.v. were dismissed by the court below and this appeal followed.

The sole question raised on this appeal is whether a case for fraud and deceit has been made out and whether the refusal of the motion for judgment n.o.v. was proper.

The basic facts involved in this dispute are admitted. Appellants contend, however, that as soon as

they discovered that the contract entered into with the manufacturer's representative was illegal, they abandoned the project and, therefore, they are not liable to appellee. In effect, they contend that no fraudulent representation was made. However, the assurances given to appellee by appellants were most positive and unequivocal that the contract was genuine both as to signatures and terms. These matters were not the expression of a mere opinion in reference to which the appellee might have been informed otherwise upon other investigation. These statements were peculiarly within the knowledge of appellants and the statements were such that appellee had a right to rely upon them. While the illegality of the transaction was not actually known to either of the parties, such a fact, in our opinion, is not determinative of the issue. As a general rule, if a person takes upon himself to state as true, that of which he is wholly ignorant, he will, if it be false, incur the same legal responsibility as if he had made the statement with knowledge of its falsity. *Hexter v. Bast*, 125 Pa. 52, 72, 17 A. 252. The legality of the transaction could be assumed and, in fact, unquestioned by either party.

Section 525 of the Restatement, Torts provides: "One who fraudulently makes a misrepresentation of fact, opinion, intention or law for the purpose of inducing another to act or refrain from action in reliance thereon in a business transaction is liable to the other for the harm caused to him by his justifiable reliance upon the misrepresentation." Section 533 provides: "The maker of a fraudulent misrepresentation in a business transaction is subject to liability to another who acts in justifiable reliance upon it if the misrepresentation, although not made directly to the other, is made to a third person for the purpose of having him repeat its terms or communicate its substance to the other in order to influence his conduct

in a particular transaction." Section 546 provides: "The maker of a fraudulent misrepresentation in a business transaction is liable for pecuniary loss caused to its recipient by his reliance upon the truth of the matter misrepresented if his justifiable reliance upon the misrepresentation is a substantial factor in determining the course of conduct which results in his loss." The evidence plainly disclosed that had not appellants assured appellee that the contract entered into between them and the manufacturer's representative was genuine, he would not have parted with his money. The loss occasioned was not the signing of a purchase agreement between appellee and the manufacturer's representative but the payment of the money in reliance of the agreement signed by appellants. A misrepresentation is material when it is of such a character, that if it had not been made, the transaction would not have been entered into. See *De Joseph v. Zambelli*, 392 Pa. 24, 139 A. 2d 644.

The issue of fraud as to a material misrepresentation was properly left for the consideration of the jury. The evidence was sufficient, and believed by the jury, that the statements made by appellants and the subsequent actions taken by them were material and false by reason of illegality. The agreement to obtain locations for the machines purchased was made contrary to the law and in disregard of the percentage allocation allowed to charitable, nonprofit organizations.

We have examined the case of *Savitz v. Weinstein*, 395 Pa. 173, 149 A. 2d 110, relied upon by appellants. That case supports the conclusion we have arrived at here more so than the position of the appellants.

Judgment affirmed.