Commonwealth *v.* Matthews, Appellant.

Argued June 13, 1961. Before ERVIN, WOODSIDE, WATKINS, MONTGOMERY, and FLOOD, JJ. (RHODES, P. J., and WRIGHT, J., absent).

Before TROUTMAN, J.

*Louis Lipschitz,* with him *Myron M. Moskowitz,* for appellant.

*Sanford S. Marateck,* Assistant District Attorney with him *Harold F. Bonno,* District Attorney, for Commonwealth, appellee.

OPINION BY WATKINS, J., September 12, 1961:

This is an appeal from the judgment of sentence of the Court of Quarter Sessions of Northumberland County by Clarence Matthews, the defendant-appellant, after conviction of cheating by false pretenses in violation of §836 of the Act of June 24, 1939, P. L. 872, as amended, 18 PS §4386; and from the denial by the court en banc of his motion in arrest of judgment and for a new trial.

The defendant in April of 1957 was the manager of Reading Home Supply Company of Shamokin, Pa., and was in active charge of the business of the company. He arranged with the Guarantee Trust and Safe Deposit Company of Shamokin, Pa., for financing the sale of freezers and food plans by his company under a plan which provided as security for the extension of the credit sought, the assignment of the installment lease contract made by the customer, discount of the judgment note executed by the customer, that accompanied the lease, and the endorsement of the company with the right of recourse in case of default. The bank also required as additional security for this line of credit that five per cent. of the amount of each loan would be retained by the bank as a reserve for losses. The forms to obtain this line of credit were provided by the bank.

In June of 1957 the defendant negotiated with Herbert J. Linderman and his wife Florence, for the sale of a freezer. The Lindermans signed an installment lease sales contract and the judgment note but because,

after measurement, it was discovered that the freezer would not fit in the place provided, they immediately thereafter advised the defendant that they did not want the freezer. The defendant agreed to disregard the transaction and stated that he would destroy the papers. He further advised the Lindermans that if they received any mail from the bank it was intended for him and not for them. No freezer was ever delivered to the Lindermans and no payments were made by them to the bank. On June 11, 1957, the defendant, on behalf of his company, executed the assignment of the Lindermans' contract and endorsed the judgment note to the bank. The bank issued a check payable to the company for $926.25 which represented the proceeds of the loan on the Linderman contract less the retained reserve. This check was cashed by the defendant.

Payments were made on the loan for the months of July, August, September and October and although it does not appear who made these payments it does appear that they were not made by the Lindermans. On July 30, 1958, the balance of the loan was paid to the bank by the Shamokin Home Supply Company. At the time of the loan there was no discussion by the defendant with the bank concerning the delivery of the freezer.

The testimony also disclosed that at the time of the Linderman loan there was $10,895 in the reserve account of the Reading Home Supply Company and in December 1957 there was a sum of approximately $21,-000 in the reserve accounts of both the Reading Home Supply Company and the Shamokin Home Supply Company, which was the name of a new company, of which the defendant was also the manager.

Paragraph 3 of the lease agreement, which was a Commonwealth exhibit, reads as follows: "Property shall not be removed from the County of Lessee's present residence. Having examined and tested Property

and found it to be in satisfactory condition, Lessee acknowledges receipt thereof and accepts same. Repairs to Property, and equipment and accessories placed on Property shall be at Lessee's expense and shall constitute component parts of Property, subject to the terms of this lease."

The above facts constituted the Commonwealth's case. The defendant offered no testimony and the jury found him guilty. His post-trial motions were denied by the court en banc and he was sentenced to pay the costs and undergo imprisonment for a period of not less than 11½ months and not more than 23½ months.

The contentions of the defendant are: (1) that there never was a misrepresentation of an existing fact on the part of the defendant and no intention to defraud the bank so that he did not obtain the money for that reason; (2) that the bank did not rely upon a misrepresentation of an existing fact to make the loan; and (3) because of the existence of the reserve fund from which it could reimburse itself, the fact that the freezer had not been sold was immaterial.

To bring this case within the provisions of the law defining cheating by false pretenses, §836, supra, there must be found to co-exist three separate elements: (1) a false pretense, as a false assertion of existing fact; (2) obtaining property or something of value thereby; (3) an intent to defraud. *Commonwealth v. Doria*, 193 Pa. Superior Ct. 206, 163 A. 2d 918 (1960).

It is true that the bank suffered no loss because the loan was paid off and because, even if it had not been paid, the bank was protected by the reserve account. However, as the court below pointed out: "It is clearly the law in Pennsylvania that restitution or repayment of money that is originally obtained by false pretenses is no defense. Commonwealth v. Stone, 187 Pa. Superior Court 236."

We also agree with the court below that the reserve account which was set up to secure the bank from all delinquencies that might arise from several hundred installment loans of this type is no defense to the charge. This fund was not owed by the bank to the defendant or his principal. It was the bank's funds until all outstanding loans advanced in the course of this installment business were fully paid. In the meanwhile the reserve account was earmarked as collateral held by the bank for the protection for this line of installment credit granted to the freezer company.

The evidence disclosed that although the Lindermans executed the papers for the purchase of a freezer he had agreed to disregard the transaction and indicated that the papers would not be used but would be destroyed. A fraudulent intent may be inferred from the testimony that he told the Lindermans that correspondence from the bank would belong to him and not to them and it may be inferred that he made the monthly payments to conceal the deceit because the evidence shows that no payments were made by the Lindermans.

When he delivered the lease agreement containing the acknowledgment by the Lindermans that they had received the freezer he was thereby making the fraudulent representation to obtain the loan; and the bank, in accepting the assignment, relied on the representation, that a freezer had been sold and delivered to the Lindermans, to make the loan.

And, as the court below put it: "Unquestionably, the defendant did obtain a sum of money when the paper was discounted and the sum of money was obtained by reason of the presentation of an assignment of what appeared to be a legally valid lease sale agreement and judgment note. By obtaining this amount of money, the defendant added to the amount of credit which the bank was extending to him under his financial arrange-

ment with it. The fact that there was a reserve account which could be applied on any losses which the bank might sustain by reason of non-payment of the various notes discounted by it, does not detract in any way from the fact that the defendant did obtain money from the bank by making a false representation of an existing fact with an intention to defraud the bank. By reason of falsely representing an existing fact, namely, a valid lease sale agreement, the defendant obtained additional credit from the bank which was something of value and it is immaterial that there may have been other accounts standing to the defendant's credit which might be used as a means of restitution."

Judgment affirmed.