Commonwealth *v.* Conners, Appellant.

Argued June 10, 1963. Before RHODES, P. J., ER-VIN, WRIGHT, WOODSIDE, WATKINS, MONTGOMERY, and FLOOD, JJ.

*Marian Schwalm Furman*, with her *Irwin Albert*, for appellant.

*Daniel E. Teeter*, District Attorney, for Commonwealth, appellee.

OPINION BY RHODES, P. J., September 12, 1963:

This is an appeal by James A. Conners from a conviction by a jury on an indictment charging him with cheating by false pretenses, a felony under section 836[1] of The Penal Code of June 24, 1939, P. L. 872, as amended, 18 PS §4836. He was tried at the same time on another indictment also charging cheating by false pretenses on which the jury returned a verdict of not guilty.

---

[1] Section 4836 states in part:

"Cheating by fraudulent pretenses

"Whoever, by any false pretense, obtains the signature of any person to any written instrument, or obtains from any other person any chattel, money, or valuable security, with intent to cheat and defraud any person of the same, . . . is guilty of a felony, . . ."

The jury found defendant guilty but recommended leniency. Defendant received a suspended sentence on condition that he pay $350 to the County of Adams and the costs of prosecution. Defendant was also placed on probation for a period of three months on condition that the sum and the costs be paid within that time.

Motions in arrest of judgment and for a new trial were filed on behalf of defendant and denied by the court below.

The issues presented on this appeal are (1) whether the evidence was sufficient to permit a jury to find that the defendant had made the false statement of which he was accused; and (2) whether there was evidence that the false statement ascribed to defendant was calculated to cheat and defraud the prosecutor.

Viewed in the light of the jury's verdict in favor of the Commonwealth, the evidence establishes the following: Defendant resides in Cumberland County and for some time has been engaged in the business of selling advertisements for telephone book covers which he distributes to telephone subscribers within a designated area. He frankly admits that he is in competition with the telephone company in its yellow page advertising, and that, whereas the telephone company uses the slogan, "Find it Fast," he uses the slogan "Find it Faster." The telephone company has adopted a regulation which it has duly filed with the Public Utility Commission prohibiting the attachment of any covers or binders to its telephone directories, and on the back of its directory it has printed the words, "No covers or binders may be attached to this directory."

On October 11, 1960, defendant solicited an advertisement from Alford L. Shull, the prosecutor. After approximately four hours of conversation between Mr. and Mrs. Shull and defendant, Mr. Shull contracted for an advertisement in the Gettysburg-Biglerville area book cover at a cost of $130, and paid defendant a de-

posit of $65. During the conversation, according to the testimony of the Shulls, Mr. Shull asked defendant about the notation on the back of the telephone book, and what the telephone company would say about his enterprise, and whether it would object to having the covers put on its book. Defendant replied, according to their testimony, that the company had given him permission to put the covers on the books. Mr. Shull testified: ". . . if they gave him permission to put it outside, I would go along with that because the people would see the outside cover quicker than they would look in the yellow pages. . If they had not given him permission on the book, I surely would never have taken it." When asked whether he would have been satisfied if the covers had come out in September of 1961 as promised, he testified: "No, I wouldn't have because the telephone company might have sent out letters telling everybody to take these off and my money would have been spent and it would have been wasted." He made substantially the same reply to a question whether he would have received what he paid for if 5100 copies were sent to all the subscribers. His answer was: "Not if the telephone company didn't give them permission; surely the people are not going to put them on their covers and therefore my money would be wasted."

Defendant stipulated that he did not have permission from the telephone company to place the covers on its directories, and denied having so told the prosecutor, but he admitted that the question had been raised by the Shulls. He testified that he told the Shulls that it was proper and legally permissible to attach covers to the directories and that he had been so advised by his counsel. It is defendant's contention that, because of the change of telephone numbers and the change in size of the telephone directory, the printing of the covers was delayed until September, 1962, which was the time of the trial.

To bring this case within the provisions of the law defining cheating by false pretenses, under section 836 of The Penal Code, there must be found to coexist three separate elements: (1) a false pretense, as a false assertion of existing facts; (2) obtaining property or something of value thereby; and (3) an intent to defraud. *Com. v. Matthews,* 196 Pa. Superior Ct. 60, 64, 173 A. 2d 772.

The evidence is sufficient to permit the jury to find that defendant did make false statements. It is the exclusive province of the jury to decide all the facts, the inferences therefrom, the credibility of the witnesses, and the weight and effect to be given to all of the testimony. *Com. v. Kloiber,* 378 Pa. 412, 416, 106 A. 2d 820. Here the Shulls clearly stated that defendant told them he had permission from the telephone company to put the covers on the books. Defendant just as clearly denied making this statement, saying that all he told the Shulls was that his counsel advised him that it was legal and permissible to attach the covers to the directories. This factual question was therefore at issue. The jury chose to believe the Shulls. The evidence warrants the finding of the jury.

The question now arises as to whether there was evidence that the false statement of defendant was calculated to cheat and defraud the Shulls. The court below correctly considered this issue when it said:

"From the testimony it is evident that the question of the right to attach the covers to the directories was discussed at length and that the prosecutor mentioned it several times. It was important to him and he testified that if the telephone company had not given permission he surely would not have taken the advertisement. . . .

"What was the intent of the defendant in making the representation? He spent four hours at the home of the prosecutor for the purpose of convincing him to

take the advertisement. The question of the right to attach the covers was one of the points of resistance which had to be overcome and the representation was obviously made for that purpose, and it had the desired effect. He did secure the prosecutor's signature to the contract and he did receive the $65 down payment, which he would not otherwise have secured. The representation was therefore material: Kelly v. Herrington, 191 Pa. Superior Ct. 361, 366 (1959).

"The defendant contends that there was no evidence of an intent to defraud the prosecutor because he always intended to publish and distribute the covers, and that the prosecutor was not defrauded because at the time of trial he had actually commenced publication and distribution (albeit two years later). But, assuming that the defendant continues the publication and distribution of the covers until the approximately 5100 are distributed, the prosecutor will not have received what was represented to him—a publication with permission from the telephone company that the covers might be attached to its directories.

"In Commonwealth v. Stone, 187 Pa. Superior Ct. 236, 241 (1958), affirmed in 395 Pa. 583 (1959), the court said: 'While some states interpret the language of false pretense statutes narrowly, we believe the proper view is expressed in Com. v. Schmunk, 22 Pa. Superior Ct. 348, 355, in the following language: "'. . . the word "obtain" as used in the statute means not so much a defrauding or depriving another of his property, as obtaining some benefits to the party making the false pretenses. . . . The discussion of this question in some of the cases is too refined for application to our plain and practical statute and opens a wide door for designing cheats.' " '

"The defendant here did obtain the benefit of the signed contract and the down payment as a result of the false representation which was exactly what he in-

tended to accomplish thereby and which, under the testimony, he would not otherwise have accomplished. There was sufficient evidence from which the jury could find, as they did, that the defendant did intend to defraud the prosecutor and that he did, in fact, defraud the prosecutor."

Judgment of sentence is affirmed.